■ In the Matter of JEAN McCASKILL, Petitioner, v JOSEPH A. D'ELIA, as Commissioner of the Nassau County Department of Social Services, et al., Respondents. — Proceeding pursuant to CPLR article 78 to review a determination of the respondent Commissioner of the Nassau County Department of Social Services, dated September 23, 1981, which, after a hearing, found petitioner guilty of certain charges and suspended her for 30 days without pay. By order of this court dated June 6, 1983 (*Matter of McCaskill v D'Elia,* 95 AD2d 779), the proceeding was held in abeyance and the matter remitted to the respondent commissioner to make written findings setting forth the essential facts and evidence upon which he relied in reaching his determination. The commissioner has now complied with our direction. Petition granted, determination annulled, on the law and the facts, without costs or disbursements, and the respondents are directed to reinstate petitioner, and pay her her salary for the period of her suspension less compensation she may have earned in any other employment and any unemployment benefits she may have received. Petitioner, a youth group worker aide III at the Nassau County Children's Shelter, was charged with incompetency in connection with the escape of a detainee, Valerie Johnson, who escaped while standing in the hall of the shelter awaiting her transfer to another facility on October 31, 1980. The escape allegedly occurred because, in the course of a morning shift change, petitioner, who was in a hurry to get home because her replacements had arrived late, left a set of keys unattended on a table in the staff lounge, and Valerie entered the lounge, took the keys and absconded. On November 26, 1980, petitioner was charged as follows: "CHARGE I. you are hereby charged with incompetency prejudicial to the discipline, good order and effi-

CIENCY OF YOUR EMPLOYMENT IN THE NASSAU COUNTY DEPARTMENT OF SOCIAL SERVICES. Specification 1: On or about October 31, 1980 while you were on duty during the night shift at the Nassau County Children's Shelter, as a YOUTH GROUP WORKER AIDE III, one of the girls to wit: Valerie Johnson, detained there, escaped from said facility. Specification 2: The escape of Valerie Johnson resulted from certain acts of negligence on your part more fully described below. Specification 3: You left a set of keys on the Staff Lounge table next to the girl's side rather than giving them directly to the worker who was to relieve you. In the alternative you could have placed same in the key cabinet in supervisor's cage on the girls [sic] side. Specification 4: You acted improperly and negligently by having left doors to the Staff Lounge, hallway and supervisor's cage open especially when you had knowledge that Valerie Johnson was fully dressed and in the area. By leaving these doors open there existed a breach of security. Specification 5: You should not have permitted Valerie Johnson to wander the hallways and open corridors of the Children's Shelter especially when she was dressed in street clothes. Specification 6: The proper procedure would have been to keep Valerie Johnson in her room or locked in the Recreation Room. Specification 7: The aforementioned acts of negligence were factors which contributed to Valerie Johnson's escape from the Children's Shelter on the said date. Specification 8: That prior to the service of these Charges and Specifications upon you, that your work has been performed in an unsatisfactory manner." (Specification 8 was later dismissed on motion of petitioner.) Effective December 2, 1980, petitioner was suspended for 30 days without pay. A hearing was thereafter held. On March 10, 1981, the hearing officer appointed by the respondent commissioner rendered her report, together with findings of fact, and recommended that no action be taken against petitioner. On September 23, 1981, the commissioner reversed the hearing officer's findings and recommendations, found petitioner guilty of all the charged specifications, and confirmed her previous 30-day suspension. This proceeding ensued. The respondent commissioner's findings of guilt are unsupported by substantial evidence in the record. First, as to specification 1, contrary to the commissioner's findings, the record makes clear that when Valerie Johnson escaped, Mrs. Martinez, the day shift supervisor, had already taken responsibility for her shift, and, thus, she, not petitioner, was on duty at the time. As to specification 2, we find that petitioner's leaving the keys on the staff lounge table was not the proximate cause of the escape, for the reasons hereinafter stated. As to specification 3, while petitioner did act improperly in leaving the keys on the staff lounge table, as the hearing officer found, Mrs. Martinez was also negligent in failing to count the keys on her arrival. Further, there was no actual rule forbidding this action for whose violation petitioner could be disciplined; and there was, in addition, testimony that workers left their keys on the staff lounge table on occasion when shift changes occurred in that room. As to specification 4, as the hearing officer noted, there was no conclusive testimony that would support a finding that any door other than the staff lounge door was open, and the record makes clear that this door was usually open during shift changes and was additionally known to malfunction. As to specifications 5 and 6, there is no credible evidence in the record that Valerie Johnson was "wandering the hallways", or that there was a specific rule requiring that she be locked in her room while awaiting her release. As to specification 7, we find that petitioner's actions were not the proximate cause of the escape. While her leaving the keys on the staff lounge table was improper, Mrs. Martinez was also negligent in failing to account for all sets of keys immediately upon arriving and taking responsibility for her shift, and, had she instead attended to her duty, the escape would not have occurred. Accordingly, we grant the petition, and annul the respondent com-

missioner's determination. In addition, we find that, under the circumstances, where petitioner had never before had any complaints made against her, no previous escape had ever resulted in any disciplinary action against an employee, and several other employees who were, arguably, at least equally responsible were not charged, a 30-day suspension was an excessive penalty (see *Matter of Pell v Board of Educ.*, 34 NY2d 222). Gulotta, J. P., Weinstein and Rubin, JJ., concur.

O'Connor, J., dissents and votes to confirm the determination and dismiss the proceeding on the merits, with the following memorandum: The record amply supports the determination of the respondent Commissioner of the Nassau County Department of Social Services that petitioner's negligence constituted a breach of security permitting the escape of a child from the Nassau County Children's Shelter on October 31, 1980. This court's power of review is limited to the question of whether the determination was supported by substantial evidence on the entire record (CPLR 7803, subd 4). Nevertheless, the majority decision proceeds to quibble with the commissioner's weighing of conflicting testimony and his discretionary decision to discipline only petitioner. I cannot acquiesce in this invasion of the commissioner's jurisdiction over his security staff. Petitioner was charged with a negligent breach of security that resulted in the escape of a child from the children's shelter. Among the acts of negligence found by the commissioner was her leaving a set of keys on a table in the staff lounge instead of transferring it to her relief or depositing it in the key cabinet when the lounge door was open and the child was dressed and in the area (specifications 3, 4, 5, 6 and 7). Petitioner testified that she was the senior worker on the night shift, and was unaware of any written rules or manual governing procedures at the shelter even though she had worked there nine years. Toward the end of her shift she prepared the child in question for her scheduled release that day into the custody of an up-State school. She also finished her report for her tour of duty and collected her personal effects in the staff lounge in order to leave when her relief arrived. Petitioner then went to the child's room to let her out and give her an after-breakfast cigarette while she waited for her transfer. Petitioner's relief was about 25 minutes late. Petitioner waited to leave as the relief cosigned her report and the child waited outside the staff post known as the "cage". Then the relief's assistant arrived. Petitioner asked the assistant to use the set of keys that petitioner had just transferred to her relief in order to unlock the staff lounge so petitioner could pick up her personal effects and leave. Petitioner admitted that she had left a duplicate set of keys known as the number two keys in the lounge. Petitioner and the assistant went down the hall to the lounge together with the child following them. While petitioner put on her coat and gathered her personal effects, the assistant and the child talked in the front of the lounge. Petitioner then left the lounge, the assistant following her out, with the child left by the lounge. Petitioner "punched out" of the shelter at 7:15 A.M. and on arriving home at 8:45 A.M. found a message to telephone the shelter. She did so and was informed of the escape. Her relief asked her which set of keys she had given her, and petitioner told her, adding that she had also informed the relief that she had left the second set locked in the staff lounge. The relief responded, "Well, that door doesn't lock." Petitioner testified at her hearing that it was the practice to exchange keys between outgoing and incoming shifts by placing them on the lounge table if the shifts happen to meet outside the "cage". Nevertheless, she admitted that the second set of keys had been left on the lounge table while the door was open for her to gather her personal effects. In particular, she saw them on the table as she left the lounge, was kissed good-bye by the child at the lounge door, and left behind both the child and the assistant as she proceeded down the hall in order to punch out,

without knowledge of what was happening behind her. Petitioner said she assumed that at that point the child was under the supervision of the relief and assistant, even though she was not sure if the lounge door had been closed after she left that room. Petitioner's testimony, by itself, constituted substantial evidence supporting the commissioner's determination that her carelessness in leaving the keys on the lounge table to which the child had foreseeable access constituted a negligent breach of security. Further evidence from other witnesses merely bolstered this conclusion. Petitioner's relief testified that when she arrived the outer doors of the shelter were locked, thus blocking the child's escape, but that the lounge door was open. The relief testified that the escape required a set of keys, and the second set was not found in the lounge where petitioner told her she had placed it before leaving. According to the relief, it was not standard procedure to transfer keys between shifts by leaving them on the lounge table, and petitioner had never exchanged keys with her in that manner, whether the exchange involved one set or, as it did on occasion, two sets of keys. The relief testified that she did not notice that a set of keys was missing at first because she was talking with petitioner and reading petitioner's report. She did not order the child back to her room because she wanted to inventory the keys first, but she could not open the key box until she obtained the original set of keys, which she had given to the assistant in order to let petitioner out of the building. When the assistant returned with her keys, the relief inventoried the key sets and found the number two set missing, and in the four- or five-minute interim she also noticed that the child had disappeared. The assistant testified that when she arrived shortly after petitioner's relief, the lounge door was open, petitioner and her relief were in the "cage", and the child was walking up and down the hall in the vicinity of the "cage". The assistant informed petitioner that her spouse was waiting for her outside, and she picked up the first set of keys from the desk where the relief was sitting to accompany petitioner to the staff lounge. There the assistant hung her coat and petitioner picked up her personal effects. They left the lounge, petitioner first, and the assistant closed the door behind them. The assistant escorted petitioner to the exit, then returned, put the keys down and asked the relief for her set of keys, which was supposed to be the number two set. The relief could not find the second set and they then discovered the child was missing. The assistant testified that she had not seen any keys on the lounge table. A union representative who worked at the shelter testified that the door to the staff lounge chronically failed to lock when closed. The director of the shelter testified that petitioner had admitted to him that she had left the number two set of keys on the lounge table rather than personally handing them to her relief or depositing them in the key box. The record further discloses that although the union representative testified that she knew of no prior disciplinary actions taken against workers after escapes, petitioner's attorney aborted a line of questioning to prove that the instant disciplinary proceeding against petitioner was taken in retaliation for an earlier grievance filed on her behalf. On this record, it is clear that the commissioner's determination to hold petitioner responsible for the child's escape is rational and fully supported by the evidence. It may very well be that this record would support a finding that other members of the shelter staff were also guilty of negligence in this matter. Nevertheless, the only question for this court is whether the commissioner's determination to affix blame upon petitioner for her obvious carelessness, and to find that such carelessness during the shift was a causative factor in the escape shortly after she left the shelter, was supported by the evidence. I believe it was. Furthermore, the measure of the discipline imposed on the commissioner's finding is in no manner shocking under the test laid down in *Matter of Pell v Board of Educ.* (34 NY2d 222). I therefore dissent and vote to confirm the determination in its entirety.